IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

                      Plaintiff,

     v.

TINA H. YI,

                      Defendant.

Case No. 3:22-cr-00079-TMB

ORDER ON RESTITUTION

## I.    INTRODUCTION

Defendant Tina H. Yi pleaded guilty to one count of Attempt to Defeat and Evade Tax in violation of 26 U.S.C. § 7201 and was sentenced on March 25, 2025.[1] The matter now before the Court is the restitution owed by Yi. For the following reasons, the Court **ORDERS** that Yi pay $1,531,729 in restitution to the United States.

## II.    BACKGROUND

Yi was the sole owner of SJ Investment LLC from April 20, 2007, to October 31, 2017.[2] SJ Investment LLC operated the Polaris Hotel in Nome, Alaska, until a fire destroyed the hotel on October 31, 2017.[3] From 2014 through 2018, Yi underreported income on her personal tax form because she did not include SJ Investment's income on the forms.[4] On March 25, 2025, the Court sentenced Yi to 12 months' imprisonment followed by three years' supervised release on Count 1: Attempt to Evade and Defeat Tax in violation of 26 U.S.C. § 7201.[5]

---

[1] Dkt. 60 (Minute Entry for Proceedings on July 3, 2024); Dkt. 83 (Minute Entry for Proceedings on March 25, 2025).
[2] Dkt. 71 (PSR) at 9.
[3] *Id.*
[4] *Id.* at 9–10.
[5] Dkts 83; 89 (Judgment).

1

In its sentencing memorandum, the Government seeks restitution of $1,531,729, which is the amount it calculated as tax due less interest and penalties for years 2014–17.[6] Due to difficulties calculating Yi's income in 2018, the Government does not intend to seek tax loss from that year.[7] The Government challenges Yi's assertion that she had allowable tax deductions that could have lowered her tax due and owing for years 2014–17.[8]

Yi challenges the Government's calculation of tax loss and initially requests the Court order restitution of $70,783.[9] She argues that the Government incorrectly considered deposits from non-income sources as income.[10] She also contends that the Government should have allowed additional deductions for business expenses she paid for on her credit cards.[11] Because she asserts that the records of her business expenses from 2014–15 were lost in a fire, her Certified Public Accountant (CPA), Sol Shin, extrapolated allowable business expenses for those years using the *Cohan* Rule.[12]

A. Restitution Hearing

At the Restitution Hearing on March 25, 2025, each party called one witness to testify as to the amount of Yi's underreported income.[13] The Government called Michael Zeznock, a lead internal revenue agent for the Internal Revenue Service ("IRS") in Alaska.[14] Zeznock testified to his method for determining Yi's underreported income. He asserted that he looked at her bank statements, but did not include deposits from non-income sources, such bank transfers, returns,

---

[6] Dkt. 77 (Government's Sentencing Memorandum) at 5.
[7] *Id.*
[8] *Id.* at 6.
[9] Dkt 79 (Defendant's Sentencing Memorandum) at 3.
[10] *Id.* at 2.
[11] *Id.*
[12] *Id. See* discussion, *infra* at Section IV.B.2.
[13] Dkt. 87 (Transcript of Hearing on March 25, 2025).
[14] *Id.* at 6.

check reversal fees, interest, checks that were paid out and cashed, and loan proceeds.[15] Zeznock clarified that he did not count transfers from one of Yi's other bank accounts as income, but he would have counted as income a bank transfer from an account that was not known to be affiliated with her.[16]

The Defense called Shin, CPA, to testify as to his own determination of Yi's income. Shin testified that the Government erred in its calculation in multiple ways.[17] He asserted that the Government incorrectly calculated deposits from Yi's ATM and cash checking business as income.[18] He also asserted that the Government missed certain allowable deductions, including expenses paid for on Yi's credit cards.[19] Shin testified that, although Yi's 2014 and 2015 credit card statements were lost in a fire at her hotel, he determined that about 48% of her annual expenses were deductible based on his analysis of 2016 and 2017.[20] He applied a similar percentage to 2014 and 2015, which he asserted is allowable under the *Cohan* Rule.[21] The defense also stated that it provided thousands of pages of documentation pre-indictment showing allowable deductions to the IRS, which the Government did not consider.[22]

Due to time constraints and to allow time to consider all the evidence, the Court continued the Restitution Hearing.[23]

---

[15] *Id.* at 14, 43.
[16] *Id.* at 44.
[17] *Id.* at 61.
[18] *Id.* at 112–13.
[19] *Id.* at 61.
[20] *Id.* at 67.
[21] *Id.* at 67–68.
[22] *Id.* at 79.
[23] *Id.* at 135.

B. *Continued Restitution Hearing*

On June 2, 2025, the date of the Continued Restitution Hearing, the Court heard testimony from Special Agent Beth Wells and Christy Lee, Yi's former attorney.[24] The Government called Special Agent Beth Wells.[25] Agent Wells testified as to the business expense documentation that had been provided by Yi pre-indictment.[26] She stated that she reviewed the documentation, but found it to be "inaccurate and confusing."[27] Instead of allowing additional deductions, she testified that she adjusted Yi's previously claimed deductions up by 15%.[28] The 15% understatement of expenses was initially calculated by an insurance company auditor when Yi submitted a claim for her hotel.[29] Wells included the 15% blanket increase to give Yi "the benefit of the doubt" that she may have had unclaimed deductions.[30] Agent Wells then testified to her calculation of taxable income, including the deposits she treated as nontaxable.[31] She also explained that she prepared the special agent report in this case and Agent Zeznock prepared the revenue agent report—they both independently calculated Yi's taxable income and tax due and then reconciled any differences in their calculations.[32]

Christy Lee, testified as to the work she did for Yi and her pre-indictment negotiations with the IRS.[33] She asserted that her office provided the IRS with thousands of pages of documentation supporting the additional deductions claimed by Yi but the IRS did not take any of

---

[24] Dkt. 102 (Amended Transcript of Proceedings June 2, 2025).
[25] *Id.* at 5.
[26] *Id.* at 8–9.
[27] *Id.* at 10.
[28] *Id.* at 19, 23.
[29] *Id.* at 18–19.
[30] *Id.* at 17; *see also id.* at 55.
[31] *Id.* at 22–28.
[32] *Id.* at 42, 63.
[33] *Id.* at 73.

4

the documentation into account.[34] Lee testified that the IRS also failed to consider Yi's cash-on-hand, which was significant because of her participation in "money clubs," but Lee acknowledged that no evidence of the amount of money Yi may have given to or obtained from the money club had been submitted to the Court.[35] Lee explained that she did not have authority to subpoena credit card statements from Yi's banks since she was working on the case pre-indictment, so instead she asked the Government to provide the statements.[36] She asserted that, while the Government shared the documentation it did have, it did not subpoena any additional documentation on her behalf.[37] Lee conceded that when she asked for the records, the Government did not have a discovery obligation to obtain them and that she did not know whether the Government had, in fact, attempted to obtain them.[38]

C. *Supplemental Briefing*

In supplemental briefing, Yi argues in favor of a new calculation of restitution—$843,912—which she asserts represents the tax loss "without the disputed deductions for a check cashing service or an ATM."[39] Yi points out that Agent Zeznock's and Agent Wells's calculations initially contained slight differences.[40] Yi opposes the Government's application of an additional 15% in allowable deductions as an "arbitrary, unexplained figure."[41] She argues that Agent Wells's testimony was unreliable because it mischaracterized certain expenses and failed to consider the defense's proffered deductions.[42] Lastly, Yi argues that the Government should not have presented

---

[34] *Id.* at 74, 77.
[35] *Id.* at 80–83, 86–87.
[36] *Id.* at 90.
[37] *Id.* at 92.
[38] *Id.* at 107–08.
[39] Dkt. 103 (Defendant's Supplemental Briefing) at 1.
[40] *Id.* at 11.
[41] *Id.* at 13.
[42] *Id.* at 18.

5

calculations of interest and penalties at the restitution hearing because it was not seeking interest and penalties and that the Government had not provided the defense with Agent Wells's calculations until shortly before the hearing.[43]

In the Government's supplemental briefing, it reiterates that Agent Wells's examination of Yi's business expenses was based on "meticulous" records of daily expenses that Yi had provided to the Government.[44] The Government casts doubt on the materials Yi produced to the Government pre-indictment that allegedly showed additional allowable deductions, because they were prepared by Lee, an "attorney with an LLM in tax law, but not any sort of forensic accountant."[45] The Government argues that it is "more reasonable" to conclude that Yi provided accurate expense figures to her tax preparer because doing so would lower her tax liability and be in her pecuniary interest.[46] It also disagrees with Yi about the applicability of the *Cohan* Rule because she was allowed deductions stemming from business expenses paid for on her credit card, just not the full amount of deductions that Yi is now asserting.[47]

Yi responded to the Government's supplemental briefing, arguing that the Government over-emphasized Yi's offense conduct during the restitution hearing.[48] Yi again challenges the Government's use of a blanket 15% increase to deductible expenses.[49]

The Government did not respond to Yi's supplemental briefing.[50]

---

[43] *Id.* at 18–20.
[44] Dkt. 104 (Government's Supplemental Briefing) at 3.
[45] *Id.* at 4.
[46] *Id.* at 5.
[47] *Id.* at 6.
[48] Dkt. 106 (Defendant's Response) at 2.
[49] *Id.* at 3.
[50] Dkt. (absence).

### III. LEGAL STANDARD

Taxable income is a taxpayer's gross income less allowable deductions.[51] Gross income is "all income from whatever source derived."[52] Under the Internal Revenue Code, businesses are permitted to deduct from taxable income "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."[53] "Ordinary and necessary" business expenses include (1) reasonable allowance for salaries and compensation, (2) traveling expenses, and (3) rental expenses or other payments required to be made as a condition to the continued use or possession of property that the taxpayer does not own.[54] "To qualify as an allowable deduction . . . , an item must (1) be 'paid or incurred during the taxable year,' (2) be for 'carrying on any trade or business,'" and (3) be an ordinary and necessary expense.[55]

Generally, a taxpayer bears the burden to prove entitlement to a particular deduction and to show that a claimed amount is an allowable business expense.[56] However, it is the Government's burden to prove the amount of loss for restitution purposes by a preponderance of the evidence.[57] The Court may "utilize only evidence that possesses sufficient indicia of reliability to support its probable accuracy."[58] When itemized proof of deductible business expenses is lacking, the Court has discretion to estimate the amount of the allowable deduction pursuant to the *Cohan* Rule.[59]

---

[51] 26 U.S.C. § 63(a).
[52] 26 U.S.C. § 61(a).
[53] 26 U.S.C. § 162(a).
[54] *Id.* § 162(a)(1)–(3).
[55] *See Comm'r v. Lincoln Sav. & Loan Ass'n,* 403 U.S. 345, 352 (1971).
[56] *Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 175 (1983); *Cao v. Comm'r*, 78 F.3d 594, 1996 WL 88079, at *1 (9th Cir. 1996) (unpublished disposition) (citing *Norgaard v. Comm'r*, 939 F.2d 874, 877 (9th Cir.1991)).
[57] 18 U.S.C. § 3664(e).
[58] *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (internal quotation omitted).
[59] *Norgaard v. Comm'r*, 939 F.2d 874, 879 (9th Cir. 1991).

## IV. ANALYSIS

The issue before the Court is the amount of restitution owed by Yi. Initially, the differences in the Government's calculations and Yi's calculations stemmed from two major points of contention between the parties. First, whether the Government had included deposits from non-income sources in its income calculation.[60] Second, whether the Government had disallowed deductions for allowable business expenses paid for on Yi's credit cards.[61]

Now, Yi asserts she is willing to concede to the inclusion of certain disputed sources in the calculation of income, namely deposits from Yi's check cashing service and ATM.[62] To this end, she offers new calculations from CPA Shin showing a tax loss of $843,912.[63] The Court has considered Yi's new calculation including the contested deposits from Yi's check cashing service and ATM and her outstanding contentions with the Government's calculation—arising from allowable deductions, the credibility of the Government's witnesses, and the applicability of the arguments made by the Government at the restitution hearing—do little to support her own calculation. However, the Court finds the Government has established the tax loss by a preponderance of the evidence.

A. *Calculation of Unreported Income*

Despite Yi's concession to the inclusion of deposits from her check cashing service and ATM, the Court still considers whether the Government has met its burden to establish unreported income attributable to Yi. The Court determines that it has.

As to non-income transfers generally, Zeznock testified that his adjustments to Yi's income did not include anything "that could [be] identified as a nontaxable source, such as bank transfers,

---

[60] *See* Dkt. 79 at 2.
[61] *Id.*
[62] Dkt. 103 at 1.
[63] *Id.*; *see also* 103-1.

returns, check reversal fees, interest, checks that were paid out and cashed."[64] When asked about loan proceeds, Zeznock stated he did not see any loan proceeds when he analyzed Yi's income, but that if he had seen loan proceeds he would have excluded them as a nontaxable source.[65] As to deposits from other bank accounts, he stated that he did not count deposits from any of Yi's other bank accounts as income and that if he had identified a deposit "as a transfer from another account, I would have brought it and questioned them about it."[66]

As to the ATM and check-cashing proceeds, Zeznock described Yi's business: individuals would use Yi's business to withdraw money from their own account or cash a check, and then that money would then appear electronically as a credit in Yi's bank account.[67] Ordinarily, it should also appear as a debit to the Yi's cash on hand because the electronic bank transfer was merely a reimbursement for the cash disbursement paid out during the ATM withdrawal or check-cashing.[68] However, Zeznock testified that there was no record of Yi taking money from her own account to use as cash on hand for either the ATM or the check cashing business.[69] Therefore, he testified that he counted any deposit from the ATM or the check-cashing business as income because he observed cash-inflow, but no corresponding cash-outflow.[70]

Shin testified, however, that he believes Zeznock improperly considered the ATM and check-cashing business deposits as income.[71] When asked on cross-examination about Zeznock's testimony that he *did* consider the ATM and check-cashing deposits, Shin contested Zeznock's

---

[64] Dkt. 87 at 14.
[65] *Id.* at 51–52.
[66] *Id.* at 44
[67] *Id.* at 43, 129–30.
[68] *Id.*
[69] *Id.* at 43–44, 129–31.
[70] *Id.*
[71] *Id.* at 112–13.

understanding of the ATM and check-cashing withdrawals.[72] When asked if the fact that there was "no record of money being cashed from the business in order to make ATM deposits" could indicate "they were skimming cash out of the business and putting it straight into the machine," Shin responded, " I don't think so" and "I don't know the exact system."[73]

The numbers now proffered by Yi, as calculated by Shin to purportedly include deposits from the check-cashing service and ATM, show Yi's net income to have been $796,086 in 2014; $792,475 in 2015; and $628,107 in 2016.[74] A new calculation for 2017 is missing from the exhibit.[75] The exhibit also lacks a Schedule C or any other form of worksheet how exactly the new value for total income was calculated.[76]

Looking at the calculations for 2014, Yi asserts that Sol Shin and Agent Wells started with substantially similar numbers for total deposits, both around $2,950,000.[77] However, that is where the similarities end. Shin's calculations include a number of large reductions to total income taken before he subtracts deductions to reach taxable income.[78] To the extent that differences still exist in the total income figures proffered by the Government and by Yi, the Court finds the former more credible and that the Government has made its showing by a preponderance of the evidence.

B. *Allowable Deductions*

The Government argues that Yi was not entitled to any additional deductions, beyond what was claimed on her original tax returns.[79] Regardless, they allowed an additional 15% in

---

[72] *Id.* at 112.
[73] *Id.* at 113.
[74] Dkt. 103-1 at 3, 5, 7,
[75] *Id.* (absence).
[76] *Id.* (absence).
[77] Dkt. 103 at 11; *see also* Exh. BB (Defense's 2014 Underreported Income Calculation); Dkt. 105-1 (Government's Summary of Gross Bank Deposits).
[78] *See* Exh. BB.
[79] Dkt. 104 at 3.

deductions, just as a previous insurance auditor had, to "give her the benefit of the prior forensic accounting."[80] In response to Yi's argument that she is entitled to additional deductions, the Government reasons that it was always in Yi's pecuniary interest to provide accurate information regarding deductions, which weighs in favor of the accuracy of the deductions she initially reported on her tax returns.[81]

Yi objects to the Government's calculation of allowable deductions.[82] She argues that the Government allowed no deductions for "credit card expenses" in tax years 2014 and 2015. She asserts that this was because Yi's credit card records from those years were destroyed during the fire at her hotel and asserts that her efforts to "have the [G]overnment obtain them were unsuccessful and efforts to subpoena the records were likewise unsuccessful."[83] Due to the lack of credit card records from those years, Yi argues that the *Cohan* Rule should be used to calculate the expense for those years.[84] Yi's proffered summaries of underreported income, supported by Shin's testimony at the hearing, claim additional allowable deductions in tax years 2016 and 2017 as well.[85] Yi asserts that she provided "[t]housands of pages" of evidence of allowable deductions to the Government.[86]

  1. <u>Yi is not entitled to further deductible business expenses</u>

The Court finds that the Government has shown that Yi was not entitled to further deductions and Yi has failed to present evidence rebutting this showing. Both Agent Wells and Agent Zeznock explained that in their analysis there was insufficient evidence to grant Yi

---

[80] *Id.* at 5; *see also* Dkt. 102 at 18, 55.
[81] Dkt. 104 at 5.
[82] Dkt. 79 at 2.
[83] *Id.*
[84] *Id.*
[85] Dkt. 87 at 61, 63; Dkt. 79-1 at 6–7.
[86] Dkt. 87 at 79.

11

additional deductions. At the restitution hearing, Agent Zeznock explained that debt verification is distinct from verification of a business expense.[87] He testified that just because a line item appears on a credit card statement does not mean it is deductible.[88] He explained that a credit card statement—such as the ones Yi provided to this Court—is merely debt verification, but he would need to see further documentation to determine if something is an allowable deduction.[89] At the continued restitution hearing, Agent Wells testified that she had reviewed the deduction document provided by Yi but found it to be "inaccurate and confusing."[90] She described looking through itemized lists of purchases and identifying numerous items that felt personal in nature.[91] The Court finds the testimony of both agents to be credible.

There is a distinct lack of evidence submitted to this Court on which this Court could determine that Yi is entitled to additional deductions. To rebut the testimony of the IRS agents, Yi submitted numerous credit card statements and worksheets purporting to show additional businesses expenses.[92] However, these exhibits only inform the Court how much money was spent and to which entity it was paid; they do not show that any of the payments were for ordinary and necessary business expenses. Debt verification is insufficient to show that Yi was entitled to additional deductions.

The Court finds Shin's testimony on the topic was less than credible. Shin testified that he did not believe the Government permitted deductions for business expenses that Yi had paid for on her credit card.[93] To support his assertion, Shin went through some of Yi's credit card

---

[87] Dkt. 87 at 55.
[88] *Id.*
[89] *Id.*
[90] Dkt. 102 at 10.
[91] *Id.* at 15–16.
[92] *See* Defense Exh. BB–EE.
[93] Dkt. 87 at 61.

statements from 2016 and 2017 and testified as to various expenses that he asserted were clearly business expenses.[94] For example, Shin testified that Yi used her American Express card exclusively for purchasing cartons of cigarettes at Costco to be sold at the store in Nome.[95] However, during Shin's testimony the Court observed numerous purchases made on the credit card that were too small to be cartons of cigarettes.[96] When the Court asked Shin about these expenses, Yi's attorney stepped in and conceded that not all the expenses were cigarettes but stated that the card was used "primarily" for cigarettes and that Shin used this credit card statement to "extrapolate" business expenses in past years.[97] The Court challenged Yi's attorney's assertion that the card was used even primarily for cigarettes,[98] but her attorney was not able to offer an explanation as to the other line items.[99] The Court finds Shin's assertions to be overbroad and lacking in credibility.

Christy Lee's testimony as to the credit card charges was at times more elucidating. She offered plausible explanations for a small number of charges—for example, that a single rotisserie chicken claimed as a business expense was allowable because it had been eaten by Yi while away from her tax home.[100] However, her testimony alone was insufficient to overcome the evidence presented by the Government. Yi has failed to show that the additional charges on her credit card were for ordinary and necessary business expenses.

---

[94] *Id.* at 62–64.
[95] *Id.* at 62.
[96] *Id.* at 85–88.
[97] *Id.* at 88.
[98] *Id.* at 90 ("Those charges are not primarily for cigarettes. There's a lot of other stuff in there that can't be used to buy cigarettes because the numbers are too low.").
[99] *Id.* at 89–90.
[100] Dkt. 102 at 94–95.

2. The Court declines to apply the *Cohan* Rule

When itemized proof of deductible business expenses is lacking, the *Cohan* Rule permits deductions based on estimates.[101] In *Cohan*, the court stated that "[a]bsolute certainty in such matters is usually impossible and is not necessary; the [court] should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making."[102] The *Cohan* Rule gives the court "considerable latitude in estimating the amount of the allowable deduction," but it does not require that the court "be compelled to guess[] or estimate."[103] The taxpayer must provide a basis for their proposed estimate.[104] In an unpublished decision, *Chancellor v. Commissioner of Internal Revenue*, the Ninth Circuit affirmed the tax court's decision not to apply the *Cohan* Rule where the tax court determined that the evidence provided "showed a mixture of personal and (potential) business expenses," and the taxpayer made "no credible effort to distinguish between the two."[105]

Shin testified that based on his analysis of her available credit card statements, he estimated, using the *Cohan* Rule, that 48–50% of her total credit card purchases each year to be allowable deductions for business expenses.[106] Notably, the exact percentage he suggested should be used changed throughout his testimony.[107] Yi states that Shin found "that business expenses in the credit card statements amounted to 48% in 2016 and[] 2017, so he extrapolated 50% to 2014

---

[101] Norgaard, 939 F.2d at 879; 6 *Mertens Law of Fed. Income Tax'n* § 25:43 (2024).
[102] *Cohan v. Comm'r of Internal Revenue*, 39 F.2d 540, 543–44 (2d Cir. 1930); *see also Norgaard*, 939 F.2d at 879.
[103] *Norgaard,* 939 F.2d at 879 (citing *Williams v. United States,* 245 F.2d 559, 560 (5th Cir.1957) and *Edelson v. Comm'r,* 829 F.2d 828, 831 (9th Cir.1987)).
[104] *Chancellor v. Comm'r of Internal Revenue,* 121 T.C.M. (CCH) 1392, at *17 (T.C. 2021), *aff'd*, No. 21-71264, 2022 WL 17729253 (9th Cir. Dec. 16, 2022).
[105] 2022 WL 17729253, at *18 (9th Cir. Dec. 16, 2022) (affirming *Chancellor v. Comm'r of Internal Revenue,* 121 T.C.M. (CCH) 1392 (T.C. 2021)).
[106] Dkt. 87 at 63, 77
[107] *Id.*

and 2015."[108] Not only has Yi failed to explain why she should be entitled to an *additional* 2% of deductions in the two earlier tax years, she has altogether failed to present evidence supporting her claim that 48% of all expenses paid for on her credit card were business expenses.

Like in *Chancellor,* Yi has presented the Court with what appears to be a mixture of personal and potential business expenses, but she has made no credible effort to show which expenses were businesses expenses. As Yi has failed to provide a basis on which the Court could estimate the allowable deductions in 2014 and 2015, the Court declines to apply the *Cohan* Rule.

C. *Applicability of Other Arguments Made at the Restitution Hearing*

Yi argues that the Government improperly presented evidence on penalties and interest and the "willfulness" of Yi's offense conduct at the restitution hearing.[109] Regardless of the relevance of the evidence of penalties and interest, the Court did not consider such evidence in fashioning its Restitution Order.

The willfulness of Yi's offense conduct, on the other hand, is a permissible consideration. Margaret Thatcher once said: "Pennies don't fall from heaven. They have to be earned here on earth."[110] Yet for years, Yi falsely reported her income for personal gain.[111] As the Government points out, Yi was incentivized to claim all allowable deductions during this time to reduce her tax liability.[112] This in turn is relevant to the weight given Yi's evidence of additional deductions.

---

[108] Dkt. 103 at 13.
[109] *Id.* at 19.
[110] Margaret Thatcher, Prime Minister, United Kingdom, Speech at Lord Mayor's Banquet (Nov. 12, 1979).
[111] Dkt. 71 (Final Presentence Investigation Report) at 1.
[112] Dkt. 104 at 5.

## V. CONCLUSION

For the forgoing reasons, the Court finds that the Government has established the tax loss by a preponderance of the evidence.

Therefore, the Court **ORDERS** that Yi pay $1,531,729 in restitution to the United States and that the Judgment be amended consistent with this Order.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 18th day of August, 2025.

/s/ *Timothy M. Burgess*
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE